# United States District Court
# Central District of California

| | |
|---|---|
| DIMITRI FARTHING,<br><br>              Plaintiff,<br><br>    v.<br><br>TAHER, INC. d.b.a. Taher Food Services; BRUCE TAHER; and DOES 1 through 20, inclusive,<br><br>              Defendants. | Case № 2:16-CV-08641-ODW (GJSx)<br><br>**ORDER DENYING STIPULATION FOR APPROVAL OF FLSA SETTLEMENT AND ORDER TO SHOW CAUSE RE LACK OF SUBJECT MATTER JURISDICTION** |

## I.    INTRODUCTION

Before the Court is the parties' Stipulation for Approval of FLSA Settlement. (ECF No. 32.) The parties submitted the proposed Confidential Settlement Agreement, Waiver, and Release ("Settlement Agreement") under seal, pursuant to the Court's Order, on November 7, 2017. (Settlement Agreement, ECF No. 33.) For the following reasons, the Court **DENIES** the Stipulation.

## II.    BACKGROUND

Plaintiff Dimitri Farthing sued his former employer in Los Angeles County Superior Court on September 14, 2016, to recover unpaid overtime compensation and wages under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"). (Compl., ECF No. 1-1.) Plaintiff also alleges causes of action for conversion and violation of California Business & Professions Code § 17200 et seq. (Compl. 16.)

1  Defendants Taher, Inc. d.b.a. Taher Food Services ("Taher") and Bruce Taher
2  removed the case to this Court on November 18, 2016, asserting that the Court had
3  diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). (Not. of Removal 3, ECF
4  No. 1.)

   On November 7, 2017, the parties filed a stipulation, requesting the Court to
   approve their Settlement Agreement, which would resolve all of Plaintiff's claims.
   (ECF Nos. 32, 33.) This request is now before the Court.

## III. LEGAL STANDARD

The FLSA provides that "any employer who violates the provisions of section 206 or 207 of this title shall be liable to the employee . . . affected in the amount of unpaid wages, or their unpaid overtime compensation, as the case may be . . . ." 29 U.S.C. § 216(b). FLSA claims may be compromised after the Court reviews and approves a settlement in a private action for back wages under 29 U.S.C. § 216(b).[1] *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). A court reviewing a proposed FLSA settlement must scrutinize it for fairness. *Id.* at 1353. In reviewing the fairness of such a settlement, a court must determine whether the settlement is a fair and reasonable resolution of a *bona fide* dispute. *Id.* at 1355.

## IV. DISCUSSION

**A. Analysis of Settlement Agreement**

As one district court found:
> To fully implement the policy embodied by the FLSA, the district [court] should scrutinize the compromise in two steps. First, the court should consider whether the compromise is fair and reasonable to the employee (factors "internal" to the compromise). If the compromise is reasonable to the employee, the court should inquire whether the compromise otherwise

---

[1] *Lynn's* requires judicial approval of a *compromise* of FLSA claims. Where a defendant offers a plaintiff full compensation for an FLSA claim, no compromise is involved and judicial approval is unnecessary. *Mackenzie v. Kindred Hospitals East, L.L.C.*, 276 F. Supp. 2d 1211, 1217 (M.D. Fla. 2003). The settlement in this case is a compromise of disputed claims. (*See* Settlement Agreement ¶ 4, ECF No. 33.)

2

>  impermissibly frustrates implementation of the FLSA (factors "external" to the compromise). The court should approve the compromise only if [it] is reasonable to the employee and furthers implementation of the FLSA in the workplace.

*Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010). In light of the relevant considerations, the Court finds the Settlement Agreement is not fair and reasonable and that the Court lacks information necessary to determine the existence of a bona fide dispute.

   *1. Terms of the Settlement Agreement*

   The Court takes issue with a number of the terms in the Settlement Agreement. First, the amount of attorneys' fees to be paid out to Plaintiff's counsel is very close to the total amount of consideration to be paid to Plaintiff.[2] While this fact alone would not necessarily make the Settlement Agreement unfair or unreasonable, *Powell v. Carey Int'l, Inc.*, 547 F. Supp. 2d 1281, 1286 (S.D. Fla. 2008) ("Given the nature of claims under the FLSA, it is not uncommon that attorneys' fee requests will exceed the amount of judgment in the case"), the parties must at least provide some evidence as to how the attorneys' fee payment was calculated,[3] and why it is reasonable. Even so, the Court finds that in a situation such as this, where the proposed payment to Plaintiff's counsel is nearly the same as the payment to Plaintiff himself, there should be a more searching inquiry into how the settlement was negotiated. "[T]he best way to insure that no conflict has tainted the settlement is for the parties to reach agreement as to [Plaintiff's] recovery before the fees of [Plaintiff's] counsel are considered." *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009). If the fees are negotiated independently from the recovery to Plaintiff, "there is no reason to assume the lawyer's fee has influenced the reasonableness of [Plaintiff's] settlement." *Id.*

---

[2] The Court also notes that the amount to be paid to Plaintiff pales in comparison to the $75,000+ amount in controversy Defendants claim is at issue in this case. (*See* Not. of Removal, ECF No. 1.)

[3] This is usually done by presenting the Court with evidence sufficient to conduct a lodestar-method calculation. *Prater v. Commerce Equities Mgmt. Co., Inc.*, No. H-07-2349, 2008 WL 5140045, at *3 (S.D. Tex. Dec. 8, 2008).

Second, the Court finds the language of the release in the Settlement Agreement far too broad. In its current form, the Settlement Agreement provides that Plaintiff releases any and all claims against Defendants, known or unknown, which may have arisen up to the date of the Settlement Agreement. As explained by another district court, this type of pervasive release is troubling:

> [A] pervasive release in an FLSA settlement confers an uncompensated, unevaluated, and unfair benefit on the employer. In the typical case, no unknown claim accrues to the employee and the pervasive release effects no change to the legal relationship of the parties. In other words, in the typical case, the pervasive release is superfluous and can be stricken without objection from either the employee or employer. In the occasional case, an unknown claim accrues to the employee and the employer receives a release from a contingent liability in exchange for a modest payment of wages unconditionally owed to the employee. The employer who obtains a pervasive release receives either nothing (if no claim accrues) or a windfall at the expense of the unlucky employee. In either instance, the employee bears the risk of loss, and the employer always wins—a result that is inequitable and unfair in the circumstance. The employer's attempt to 'play with house money' fails judicial scrutiny.

*Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1352 (M.D. Fla. 2010). The Court agrees with the district court in *Moreno*. The release in the Settlement Agreement is overly broad in the absence of additional consideration to make up for the rights Plaintiff would be forsaking.

Lastly, the Court finds the confidentiality terms in the Settlement Agreement to be unfair and unreasonable in light of "internal" and "external" factors. Under the proposed terms, Plaintiff is not only disallowed from discussing the fact or terms of the Settlement Agreement, but he is also forbidden from disclosing any matter relating to his employment with Defendants. Arguably, this could preclude Plaintiff from even referencing his employment with Defendants on his resumé. This is unfair to Plaintiff. Additionally, confidentiality provisions "are often implemented by the

employer for fear that settling with one employee will encourage other employees to assert their FLSA rights." *Gamble v. Air Serv Corp.*, 247 F. Supp. 3d 1302, 1305 (N.D. Ga. 2017). These provisions, however, "do nothing to resolve bona fide disputes between the parties and only work to frustrate the implementation of the private-public rights and impede Congress's intent to ensure widespread compliance with the statute." *Id.* The Court finds the confidentiality terms in the Settlement Agreement to frustrate the spirit and intent of the FLSA.

### 2. Bona Fide Dispute

As the Settlement Agreement reflects a substantial compromise from the amounts prayed for in Plaintiff's Complaint, before the Court can approve the terms of such a compromise the parties must establish that it is a reasonable resolution to a bona fide dispute. *Yue Zhou v. Wang's Restaurant*, No. C-05-0279-PVT, 2007 WL 2298046, at *1 (N.D. Cal. Aug. 8, 2007). The parties have not done that here. All the parties submit to the Court in support of their Settlement Agreement is a four-page stipulation with unsupported conclusions, such as that the Settlement Agreement "reflect[s] a reasonable compromise of Plaintiff's claims." (ECF No. 32 at 3.) This is not sufficient.

## B. Subsequent Requests for Approval of Settlement Agreements

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Therefore, a party must demonstrate "compelling reasons" to seal judicial records attached to a dispositive motion. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006). As the Settlement Agreement would dispose of the case, the Court finds that the "compelling reasons" test applies here. "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" are insufficient. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 476 (9th Cir. 1992).

Although this Court permitted the parties to submit their proposed Settlement Agreement under seal, after reviewing the Settlement Agreement, it is now clear that

the terms contained therein do not rise to the level of "compelling reasons" as required by the Ninth Circuit. Additionally, there is a strong presumption in favor of keeping the settlement agreements in FLSA wage-settlement cases unsealed and available for public view. *Prater v. Commerce Equities Mgmt. Co., Inc.*, No. H-07-2349, 2008 WL 5140045, at *2 (S.D. Tex. Dec. 8, 2008); *see Pessoa v. Countrywide Home Loans, Inc.*, No. 6:06-cv-1419-ORL-JGG, 2007 WL 1017577, at *1 (M.D. Fla. Apr. 2, 2007) ("In the case of sealing settlement agreements that are approved by the court, once the matter is brought to the court for resolution, it is a public matter").

Because the Court does not approve the Settlement Agreement, the Court finds it harmless to maintain the seal as previously approved. Should the parties wish to submit any subsequent settlement agreement for the Court's approval, however, they should plan to file it publicly, or provide further evidence of "compelling reasons" to support sealing.

## C. Order to Show Cause re Subject Matter Jurisdiction

Federal courts have subject matter jurisdiction only as authorized by the Constitution and Congress. U.S. Const. art. III, § 2, cl. 1; *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts have jurisdiction where an action arises under federal law, or where each plaintiff's citizenship is diverse from each defendant's citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332(a).

Federal courts have an obligation to determine the existence of subject matter jurisdiction, regardless of whether the parties raise the issue. *See Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Federal Rule of Civil Procedure 12(h)(3) requires that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Under Rule 12(h)(3), "a court may raise the question of subject matter jurisdiction, *sua sponte*, at any time during the pendency of the action . . . ." *Snell v. Cleveland, Inc.*, 316 F.3d 822, 826 (9th Cir. 2002).

In the Notice of Removal, Defendants sufficiently establish that there is diversity among the parties. It is less clear, however, whether the amount-in-controversy requirement has been met. Defendants assert that the total value of the actual damages (other than attorneys' fees) Plaintiff seeks is $55,739.25. Defendants contend that the Court should also consider Plaintiff's request for punitive damages and attorney's fees in finding that the total amount in controversy exceeds $75,000.

In the Ninth Circuit, statutorily authorized attorneys' fees are creditable towards the amount in controversy. *Camarreri v. Phillips 66 Co.*, No. CV 17-0202-FMO (JCX), 2017 WL 436386, at *3 (C.D. Cal. Jan. 31, 2017) (citing *Lowdermilk v. U.S. Bank Nat'l Ass'n*, 479 F.3d 994, 1000 (9th Cir. 2007), *overruled on other grounds as recognized by Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 976–77 (9th Cir. 2013)). Here, all of the attorneys' fees sought are statutorily authorized, and as a result, are creditable towards the amount in controversy. *See* Cal. Lab. Code §§ 98.2(c), 218.5(a), 226(e)(1), 1194(a).

The Ninth Circuit, however, "has not expressed any opinion as to whether expected or projected future attorney fees may properly be considered 'in controversy' at the time of removal for purposes of the diversity-jurisdiction statute." *Reames v. AB Car Rental Servs., Inc.*, 899 F. Supp. 2d 1012, 1018 (D. Or. 2012). However, the trend within the Central District of California is to favor only those attorneys' fees incurred before the filing of a notice of removal. *See, e.g.*, *Villarreal v. Central Freight Lines, Inc.*, No. 2:16-cv-8747-ODW-AGR, 2017 WL 656726, at *4 (C.D. Cal. Feb. 13, 2017); *Camarreri*, 2017 WL 436386, at *3; *Morin v. Am Expediting Co.*, No. 16-cv-8552-FMO-AGR, 2016 WL 7176568, at *3 (C.D. Cal. Dec. 9, 2016); *Bloomer v. Serco Mgmt. Servs., Inc.*, No. 16-cv-1655-JGB-RAO, 2016 WL 4926409, at *2 (C.D. Cal. Sept. 15, 2016). The Court finds that "future attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in controversy' at the time of

removal." *Morin*, 2016 WL 7176568, at *3. There is no evidence before the Court, however, of the amount of attorneys' fees "in controversy" at the time of removal.[4]

Defendants also contend that the Court should consider Plaintiff's prayer for punitive damages in calculating the jurisdictional threshold. However, Defendants provide no evidence of the potential recovery of punitive damages for the Court to make the necessary calculation.

For these reasons, the Court **ORDERS** Defendants to **SHOW CAUSE** no later than **November 22, 2017**, why the Court should not remand this case to state court for lack of subject matter jurisdiction.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** the parties' stipulation for approval of the Settlement Agreement and Defendants are **ORDERED TO SHOW CAUSE** no later than **November 22, 2017**, why the Court should not remand this case to state court.

**IT IS SO ORDERED.**

November 9, 2017

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

---

[4] Even if the Court were to take account of fees incurred subsequent to removal, which it is not inclined to do, the amount of fees listed in the proposed settlement is $11,283.25, which would still not raise the total amount-in-controversy to the $75,000 minimum.